IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALLACE D. COWARD,  :  Plaintiff,  : | |
| : | |
| v.  : | CIVIL ACTION NO. 23-2429 |
| : | |
| PHILA. DEPT. OF PRISONS, *et al.*,  :  Defendants.  : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                                                                  **September 1, 2023**

Plaintiff Wallace D. Coward, a prisoner currently incarcerated at SCI-Smithfield,[1] raises constitutional claims pursuant to 42 U.S.C. § 1983 generally stemming from an altercation he had with another inmate, a related disciplinary proceeding, and matters related to his medication, all of which occurred while he was a pretrial detainee at the Philadelphia Industrial Correctional Center ("PICC"). Plaintiff seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Plaintiff leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim.

I.   **FACTUAL ALLEGATIONS**[2]

Plaintiff's Complaint names the following Defendants: (1) the Philadelphia Department of Prisons; (2) Q. Thomas, identified as a Sergeant/Supervisor; (3) McPherson, identified as a

---

[1] At the time he filed this civil action, Plaintiff was incarcerated within the Philadelphia Prison System. However, the Philadelphia Prison System's incarcerated person locator tool reflects that he is no longer incarcerated there. Public dockets and the Pennsylvania Department of Corrections inmate locator tool reflect that Plaintiff is currently incarcerated at SCI Smithfield, and was incarcerated there as of July 10, 2023. *See Commonwealth v. Coward*, No. CP-51-CR-0007891-2019 (C.P. Phila.). Accordingly, the Court will direct the Clerk of Court to update Plaintiff's address.

[2] The allegations set forth in this Memorandum are taken from Plaintiff's Complaint. *See* Compl. [Doc. No. 2]. The Court adopts the pagination supplied by the CM/ECF docketing system.

Correctional Officer; (4) Dr. Sambria; and (5) Dr. Flower, identified as a Psychiatrist.[3] Plaintiff raises constitutional claims based on events that occurred at PICC.

Plaintiff asserts that he takes certain medications but does not provide further details about the medications he takes.[4] Plaintiff alleges that at some point, Defendant Dr. Sambria "over medicated [him] with [too] much blood pressure medication causing [his] legs to swell to double the size."[5] As a result, Plaintiff was given a water pill to "relieve the fluid from [his] legs."[6] Plaintiff further alleges that Defendant Dr. Flower "over medicated [him] with a psych. Medication risperidal [sic] which caused [his] bones to ache" and that Dr. Flower did not provide him with "one on one sessions."[7]

In an apparently unrelated set of allegations, Plaintiff brings claims based on an altercation he had with another inmate. He alleges that he "attempted to tell Defendant Sgt. Thomas what had happened on the unit" one day "in the hall at the medication line" and

---

[3] Compl. [Doc. No. 2] at 1-3. In drafting his Complaint, Plaintiff checked the boxes on the form he used indicating that he seeks to name the Defendants in their official capacity. Plaintiff appears not to have understood the implication of checking the official capacity box. Claims against municipal employees named in their official capacity are indistinguishable from claims against the governmental entity that employs the Defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. Because Plaintiff does not attempt to allege an official capacity claim, the Court will liberally construe the Complaint to assert claims against the individual Defendants in their individual capacities. *See Monell*, 436 U.S. at 694 (holding that, to state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (quotations omitted) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings."); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed even though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

[4] Compl. [Doc. No. 2] at 3.

[5] Compl. [Doc. No. 2] at 16.

[6] Compl. [Doc. No. 2] at 16.

[7] Compl. [Doc. No. 2] at 16.

Defendant Thomas responded, "I don't have anything to say to you" and walked away.[8] Thereafter, Plaintiff received his medication and returned to the unit.[9]

Apparently on the same day, although it is unclear, Plaintiff was using the phone on the unit to call his wife.[10] Plaintiff alleges that while he was on the phone, another inmate reached over him, "making contact with [him] to put something in one of the boxes."[11] Plaintiff told the inmate that he should have said "excuse me" and returned to his call; he was then "hit from behind by that inmate."[12] After being attacked, Plaintiff turned around and saw Defendant McPherson taking the inmate to his cell.[13] Plaintiff asked whether Defendant McPherson would "write this up" and McPherson shook his head back and forth in a manner suggesting that he would not.[14] Plaintiff was taken to the hospital where he received two staples in his head.[15] Plaintiff alleges that if Thomas had listened to him, "she could have had the inmate locked in his cell, and the altercation . . . would have never happened."[16]

When Plaintiff returned to PICC from the hospital, he was "placed in the RHU without privileges."[17] Plaintiff alleges that "the Sgt. [presumably Sgt. Thomas] had [him] put in the RHU

---

[8] Compl. [Doc. No. 2] at 4.

[9] Compl. [Doc. No. 2] at 5.

[10] Compl. [Doc. No. 2] at 13.

[11] Compl. [Doc. No. 2] at 13.

[12] Compl. [Doc. No. 2] at 13. In a separate section of the Complaint, Plaintiff describes the incident somewhat differently, alleging that while he was using the phone "the same inmate that threw the apples and busted the TV screen threw milk above phones and the milk splashed all over me." Compl. [Doc. No. 2] at 5. Plaintiff alleges that when Plaintiff asked what the problem was, the inmate attacked him. Compl. [Doc. No. 2] at 5. The Complaint does not describe any prior incident involving an inmate throwing apples.

[13] Compl. [Doc. No. 2] at 13.

[14] Compl. [Doc. No. 2] at 14.

[15] Compl. [Doc. No. 2] at 5.

[16] Compl. [Doc. No. 2] at 5, 13.

[17] Compl. [Doc. No. 2] at 5.

to stop [him] from conversing with [his] wife."[18] An "inmate misconduct" report attached to the Complaint prepared by Officer O'Neill, who is not named as a Defendant, reflects that as a result of the altercation, Plaintiff was charged with disciplinary violations for causing a disturbance and violating rules.[19] The report states that on January 12, 2023, O'Neill was assigned to K-Unit with Defendant Officer McPherson when Plaintiff and another inmate "began arguing in the dayroom causing a disturbance" and that both "incarcerated persons refused to cease their disturbing behavior at which time . . . their exercise was terminated."[20] Plaintiff questions how O'Neill could have prepared the report since O'Neill allegedly was "not in a position to see what happened" because he was on the top tier when the incident occurred.[21] Plaintiff attended a hearing on the disciplinary charges and was found not guilty.[22] It is unclear how long he was kept in the RHU.

Plaintiff brings constitutional claims based on the above allegations. The Court understands him to be asserting claims for failure to protect, deliberate indifference to medical needs, and claims related to his placement in the RHU in connection with the disciplinary charges. He also appears to be bringing a claim based on changes having made to his medication without his knowledge.[23] Plaintiff seeks damages.[24]

---

[18] Compl. [Doc. No. 2] at 13.

[19] Compl. [Doc. No. 2] at 15.

[20] Compl. [Doc. No. 2] at 15.

[21] Compl. [Doc. No. 2] at 14.

[22] Compl. [Doc. No. 2] at 13.

[23] *See* Compl. [Doc. No. 2] at 3.

[24] *See* Compl. [Doc. No. 2] at 5.

## II. STANDARD OF REVIEW

The Court will grant Plaintiff leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[25] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),[26] which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]"[27] "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"[28] Conclusory allegations do not suffice.[29] As Plaintiff is proceeding *pro se*, the Court construes his allegations liberally.[30]

## III. DISCUSSION

Plaintiff brings his Complaint pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and

---

[25] Because Plaintiff is a prisoner, he must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act.

[26] *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted).

[28] *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).

[29] *Iqbal*, 556 U.S. at 678.

[30] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

must show that the alleged deprivation was committed by a person acting under color of state law."[31] In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and therefore a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.[32]

### A. Claims Against the Philadelphia Department of Prisons

Plaintiff names the Philadelphia Department of Prisons as a Defendant. However, City departments are not suable entities under § 1983 because they do not have a separate legal existence from the City of Philadelphia.[33] Because the Philadelphia Department of Prisons is not subject to suit for purposes of § 1983, Plaintiff's claims against it are dismissed with prejudice.[34]

### B. Claims Against Defendants Thomas and McPherson

#### 1. Failure to Protect

Liberally construing the Complaint, it appears that Plaintiff asserts a failure to protect claim against Defendant Sergeant Thomas, and possibly Defendant Correctional Officer McPherson.[35] Since Plaintiff was a pretrial detainee when the underlying incident occurred, his

---

[31] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

[32] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).

[33] *See Vurimindi v. City of Philadelphia*, No. 10-0088, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (holding that under 53 PA. CONS. STAT. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia"); *see also White v. City of Philadelphia*, No. 21-2688, 2021 WL 4169424, at *3 (E.D. Pa. Sept. 14, 2021) ("The PDP is an agency of the City. City agencies are not suable entities under § 1983 because they do not have a separate legal existence.").

[34] Even if Plaintiff had sued the proper municipal entity, his claims would still fail. To plead a § 1983 claim against a municipal entity, a plaintiff must allege that the municipal entity's policy or custom caused the violation of his constitutional rights. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009). Plaintiff has not articulated any basis for municipal liability here.

[35] *See* Compl. [Doc. No. 2] at 3 (describing one of the rights Plaintiff claims was violated as his right "to be kept safe while in the county prison").

claim is governed by the Due Process Clause of the Fourteenth Amendment.[36] The rights afforded to pretrial detainees under the Due Process Clause are at least as great as those afforded by the Eighth Amendment.[37] Therefore, courts analyzing cases by pretrial detainees apply the same standard of deliberate indifference applied to the Eighth Amendment cases.[38]

Prison officials have a duty "'to protect prisoners from violence at the hands of other prisoners.'"[39] However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."[40] To state a plausible failure to protect claim, Plaintiff must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm.[41] Deliberate indifference is a subjective standard.[42] Plaintiff must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety[.]"[43] "[I]t is not sufficient that the official should have been aware" of the excessive risk.[44]

Plaintiff's failure to protect claim against Defendant Thomas is based on allegations that Plaintiff attempted to tell her "what had happened on the unit" but that she failed to listen to

---

[36] *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (holding that the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees).

[37] *See Simmons v. City of Philadelphia*, 947 F.2d 1042, 1067 (3d Cir. 1991).

[38] *Id.*

[39] *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

[40] *Farmer*, 511 U.S. at 834.

[41] *See id.* at 834; *Hamilton*, 117 F.3d at 746; *see also Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (applying deliberate indifference standard to failure to protect claim asserted by pretrial detainee).

[42] *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

[43] *Id.* at 135.

[44] *Id.* at 125.

him.[45] Plaintiff concludes that had Defendant Thomas listened to what he had to say, the altercation with the other inmate might not have occurred.[46] These allegations, as pled, are insufficient to state a failure to protect claim. The Complaint does not provide any explanation about anything that previously happened on the unit involving either Plaintiff or the inmate who attacked him, nor does it provide any specific facts from which one could infer that Plaintiff was subject to a specific threat from this inmate. In other words, the facts alleged in the Complaint do not support an inference that there was a specific threat to Plaintiff's safety from this inmate prior to their altercation at the phone. Similarly, it is unclear what Plaintiff sought to convey to Defendant Thomas about any threat he perceived. Because there is an insufficient factual basis from which one could conclude that the inmate in question posed a substantial risk of serious harm to Plaintiff prior to the altercation, the Complaint does not state a plausible failure to protect claim against Defendant Thomas.[47] Additionally, nothing in the Complaint supports an inference that Defendant McPherson had reason to know that Plaintiff could or would be attacked prior to the moment the altercation took place, or that Defendant McPherson had any reasonable opportunity to intervene before Plaintiff was injured by the inmate who attacked him. Accordingly, Plaintiff has failed to allege a failure to protect claim against either Defendant.[48]

---

[45] Compl. [Doc. No. 2] at 4-5.

[46] Compl. [Doc. No. 2] at 5, 13.

[47] *See Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012) (concluding that "the risk that an inmate with a history of violence might attack another inmate for an unknown reason" was a "speculative risk" insufficient to support a failure to protect claim), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020).

[48] *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### 2. Due Process

The Court understands Plaintiff's claims against Defendant McPherson to be based primarily on the disciplinary charges filed against Plaintiff and his placement in the RHU. Relatedly, Plaintiff alleges that "the Sgt. [presumably Sgt. Thomas] had [him] put in the RHU to stop [him] from conversing with [his] wife."[49] These claims arise under the Due Process Clause.

"Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'"[50] With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the procedural due process protections set forth in *Wolff v. McDonnell*."[51] "[T]he filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process[,]"[52] as "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports."[53]

Defendant McPherson is alleged to have represented that he would not impose disciplinary charges on Plaintiff as a result of the altercation between Plaintiff and the other inmate, but that Plaintiff was nevertheless subjected to disciplinary charges in connection with a report prepared by another officer. It is not clear what role, if any, Defendant McPherson played

---

[49] Compl. [Doc. No. 2] at 13.

[50] *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)).

[51] *Id.* (citing 418 U.S. 539 (1974); *see Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

[52] *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*).

[53] *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *see Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

in bringing the disciplinary charges against Plaintiff or confining him in the RHU. Although Defendant Thomas is alleged to have confined Plaintiff in the RHU to prevent him from speaking with his wife, it is also unclear what specific role Defendant Thomas played in the filing of the disciplinary charges. In any event, the Complaint makes clear that Plaintiff was given a hearing to defend against the allegedly false misconduct charges, and that he was found not guilty. It appears, then, that Plaintiff was afforded sufficient process to defend against those charges. Nothing in the Complaint suggests otherwise. Nor does the Complaint allege any additional facts from which one could infer that Plaintiff's rights were otherwise violated while he was in the RHU or that Defendant McPherson or Defendant Thomas violated Plaintiff's rights in any other manner.[54] Accordingly, Plaintiff's due process claims based on the disciplinary charges and his confinement in the RHU will be dismissed.

### C. Claims Against Drs. Sambria and Flower

Plaintiff's claims against Drs. Sambria and Flower are based on matters related to Plaintiff's medical care. To state a Fourteenth Amendment claim based on the failure to provide medical care, a pretrial detainee must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[55] A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

---

[54] "[P]risoners 'ha[ve] no right to unlimited telephone use,' and reasonable restrictions on telephone privileges do not violate their First Amendment rights." *Almahdi v. Ashcroft*, 310 F. App'x 519, 522 (3d Cir. 2009) (*per curiam*) (quoting *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994)). Although Plaintiff appears to have been cut off from speaking with his wife as a result of the altercation, the Complaint does not provide any further facts from which one could infer that his constitutional right to communicate with family was infringed.

[55] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (holding that the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis).

substantial risk of serious harm exists, and he must also draw the inference."[56] Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."[57]

"A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[58] Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.[59] "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."[60]

Under the Fourteenth Amendment prisoners also "retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives."[61] In that regard, "[p]risoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting."[62] In this context, "the judgment of prison authorities will be presumed valid unless it is shown to be such

---

[56] *Farmer*, 511 U.S. at 837.

[57] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[58] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quotations omitted).

[59] *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

[60] *Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*).

[61] *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990).

[62] *Id.*

a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment."[63] "To establish a violation of a prisoner's right to informed consent, the prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment."[64]

Plaintiff alleges that Dr. Sambria prescribed too much blood pressure medication for him, which caused his legs to swell and required him to take a water pill to reduce the swelling.[65] Dr. Flower also allegedly overmedicated Plaintiff with a psychiatric medication that "caused [Plaintiff's] bones to ache" and did not provide Plaintiff with "one on one sessions."[66] Plaintiff suggests that he was not informed of or consulted about a medication change, but his allegations on this point are unclear.[67]

As pled, the Complaint fails to adequately allege deliberate indifference. Assuming that Plaintiff's medical needs are serious since they required care by a doctor, Plaintiff has not established that Drs. Sambria and Flower were deliberately indifferent to those needs. In general, prescribing a type or amount of medication that has potential side effects and failing to inform an incarcerated person of those side effects, which appears to be what Plaintiff alleges here, at most

---

[63] *Id.*

[64] *Sanders v. Ocean Cnty. Bd. of Freeholders*, No. 16-5380, 2021 WL 637828, at *3 (D.N.J. Feb. 18, 2021) (quotations omitted).

[65] Compl. [Doc. No. 2] at 16.

[66] Compl. [Doc. No. 2] at 16.

[67] *See* Compl. [Doc. No. 2] at 3 (indicating that Plaintiff's right "to be made known when medication is added or increased" was violated); Compl. [Doc. No. 2] at 4 (indicating that the doctors failed "to consult patient").

suggests negligence rather than deliberate indifference.[68] Plaintiff has not pled sufficient facts to suggest a different result here. Further, it is apparent that Plaintiff was treated for the swelling in his legs. It is unclear how the pain in his bones was handled but nothing suggests that it went unaddressed or that Dr. Flower persisted in a course of treatment thereafter that caused unnecessary pain. Nor does the Complaint provide a sufficient factual basis from which one could conclude that Plaintiff required "one on one sessions" as a matter of medical necessity such that failure to provide such sessions amounts to deliberate indifference. In sum, the Complaint as pled does not state a claim for deliberate indifference.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Plaintiff's claims against the Philadelphia Department of Prisons will be dismissed with prejudice because the defects in those claims cannot be cured. Plaintiff's claims against the remaining Defendants will be dismissed without prejudice to him filing an amended complaint in accordance with the Court's Order that accompanies this Memorandum.

---

[68] *See Bryant v. Kaskie*, 744 F. App'x 39, 42 (3d Cir. 2018) (*per curiam*) (holding that the "failure to inform [plaintiff] of the potential side effects of Risperidone is insufficient to demonstrate deliberate indifference."); *Sanders*, 2021 WL 637828, at *3 ("Absent any allegations demonstrating that Defendants' were deliberately indifferent towards Plaintiff's right to refuse medical treatment, Defendants' alleged failure to inform Plaintiff of potential cardiovascular side effects from Pamelor amounts to, at most, medical malpractice or negligence."); *see also Dickerson v. SCI Graterford*, 453 F. App'x 134, 136 (3d Cir. 2011) (*per curiam*) (holding that "doctors' decisions not to prescribe [plaintiff's] preferred choice of medications" did not amount to a constitutional violation).