IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALLACE D. COWARD<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Q. THOMAS, et al.<br><br>　　　　　Defendants. | CIVIL ACTION NO. 23-2429 |

### MEMORANDUM OPINION

**Rufe, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**April 5, 2024**

　　Plaintiff Wallace D. Coward brings claims under § 1983 against two correctional officers and a physician at the Philadelphia Industrial Correctional Center ("PICC") for failure to protect and deliberate indifference, based on incidents which arose during his time as a pretrial detainee at PICC. Before the Court is Plaintiff's Second Amended Complaint ("SAC"). For the reasons set forth below, the Court will permit Coward to proceed to service on all of his claims.

### I.　BACKGROUND

　　**A.　Relevant Facts**

　　The SAC names three Defendants: (1) Q. Thomas, identified as a Sergeant at PICC; (2) McPherson, identified as a Correctional Officer ("CO") at PICC; and (3) Dr. Flower, identified as a Psychiatrist at PICC.[1] The following facts are accepted as true for purposes of evaluating the Coward's SAC at the screening stage.

---

[1] SAC at 2, 7 [Doc. No. 20]. The Court adopts the pagination supplied by the CM/ECF docketing system. As Coward fails to include any allegations against Doctor Sambria in the current version of his Complaint, the Clerk of Court will be directed to terminate Doctor Sambria as a Defendant.

1. *Bridges Attack (Defendant Thomas)*

Plaintiff Coward was a Block Representative at PICC for several months.[2] That role involved meeting with the Warden once a month to share the concerns of the inmates in his unit and, in turn, to convey the Warden's expectations back to the inmates.[3] At one meeting, Coward was informed that PICC's practice would be to run recreation hours with one officer per one tier, and two officers per two tiers.[4] One day, however, several tiers of inmates were being supervised only by a single Cadet rather than a CO.[5] While the Cadet was handling a situation on the top tier, an inmate named Bridges threw an apple at the television in the K-Unit's day room, breaking the screen and rending it inoperable.[6]

While on his way to the medication line in the morning, Coward attempted to inform Defendant Sergeant Thomas about the incident in the day room, but she "ignored [Coward's] attempt to alert her," said, "I have nothing to say to you," and proceeded to her office.[7] After taking his medication, Coward returned to his unit and called his wife on the phone.[8] Minutes later, Bridges threw a carton of milk into the wall above the phone, causing Coward to become covered with milk.[9] When Coward asked Bridges why he threw the milk, Bridges ran over to Coward and "started throwing punches."[10] Bridges struck Coward on his left jaw, causing him to

---

[2] SAC at 12 [Doc. No. 20].

[3] *Id.*

[4] *Id.* at 9, 12.

[5] *Id.* at 12, 9.

[6] *Id.* at 3, 9, 12.

[7] *Id.* at 3; *see also id.* at 9, 20. Coward contends that two eyewitnesses, CO Brown and fellow inmate Howard Reuben, saw Sergeant Thomas ignore Coward that morning. *Id.* at 20.

[8] *Id.* at 9, 12, 17.

[9] *Id.* at 9–10, 13, 17.

[10] *Id.* at 10, 13.

hit the back of his head on a steel stool and suffer a gash.[11] Coward was escorted to an outside hospital for treatment, where he received two staples in his head.[12] The SAC suggests that Coward and Bridges had a history: Beginning in the summer of 2021, inmate Bridges had previously "been placed in his cell on a number of [occasions]" by various COs "for screaming 'Who is that old motherfucker kill the mothe[r]fucker.'"[13]

Upon returning from the hospital, Coward was told by a Correctional Officer in the receiving room that Coward had a "major write up (misconduct) and . . . was going to the hole (RHU)."[14] Coward alleges that he was placed in the RHU because Sergeant Thomas directed the officer on the unit to write him up for a misconduct for fighting, but Sergeant Thomas did not bring the misconduct to the RHU for Coward's signature and he never received a copy.[15] Coward strongly believes that had Thomas "listen[ed] to [his] complaint and acted [by] putting [Bridges] in his cell, the altercation . . . would never [have] occurred."[16] He adds that certain safety procedures were not followed that day, including that Sergeant Thomas failed to make a tour of the unit in the morning, as was the practice of the Sergeant who had preceded her.[17]

2. *Mullins Attack (Defendant McPherson)*

On a different occasion, Coward was using the telephone when he was "struck from behind" by Mullins, another inmate.[18] Defendant Correctional Officer McPherson was allegedly

---

[11] *Id.* at 4, 10, 13, 17.

[12] *Id.* at 4, 10, 13, 17.

[13] *Id.* at 12. Publicly available records indicate that Plaintiff was over 65 years old during the relevant period. *See* Docket at 3, *Commonwealth v. Coward*, No. CP-51-CR-0007900-2019 (C.P. Phila.).

[14] SAC at 14, 17 [Doc. No. 20] (quotation marks omitted).

[15] *Id.* at 10.

[16] *Id.*

[17] *Id.* at 12.

[18] *Id.* at 5, 11.

standing behind the phones at the time, "no more [than] three feet behind [Coward] looking in the direction where he was on the phone," yet failed to prevent the strike.[19] Coward alleges that he had turned toward the wall for some privacy and saw McPherson facing the telephones, therefore McPherson must have seen Mullins as he approached Coward from behind.[20] When Coward turned around to see "where the blow came from, CO McPherson was escorting inmate Mullins to his cell on the top tier."[21] Coward was sent "to medical" and received Tylenol and two ice packs for his injuries.[22] He also alleges that he received a misconduct based on a report written by an officer who was on the top tier at the time of the altercation.[23]

### 3. *Risperdal Prescription (Defendant Flower)*

As for his allegations against Dr. Flower, Coward alleges that he had a one-on-one meeting with Dr. Flower in November 2021, and Dr. Flower wanted to "increas[e] the dosage of the medication" Coward was on, *i.e.*, "respidol" (apparently a reference to Risperdal), even though Coward was allergic to it.[24] Coward alleges that he "refused to sign the consent form" and told Dr. Flower that he did not want to take the medication anymore because he "was allergic to that medication [and] it causes [him] to swell."[25] Dr. Flower "refused to stop the medication" and prescribed the increase anyway, which caused Coward's legs to swell.[26]

---

[19] *Id.* at 11; *see also id.* at 15.

[20] *Id.* at 15, 18.

[21] *Id.* at 5; *see also id.* at 15.

[22] *Id.* at 15.

[23] *Id.* at 5.

[24] *Id.* at 6.

[25] *Id.*

[26] *Id.* at 11.

Coward was prescribed water pills to remove the fluid from his legs, and he claims that his legs have scratch marks and discoloration as a result.[27]

Based on these allegations, Coward asserts claims for failure to protect and deliberate indifference to his serious medical needs.[28] He seeks damages.[29]

### B. Procedural History

On July 17, 2023, Coward filed his initial Complaint against the three present Defendants and others who are no longer named.[30] Coward asserted constitutional claims for failure to protect him from an assault by another inmate, a due process violation related to time he spent in the RHU in connection with disciplinary charges filed against him, and for deliberate indifference to his medical needs.[31] On September 1, 2023, the Court granted Coward leave to proceed *in forma pauperis* and dismissed his Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[32] The Court concluded, as relevant here, that: (1) Coward failed to state a failure to protect claim because he did not allege "anything that previously happened on the unit" between him and "the inmate who attacked him" or "provide any specific facts from which one could infer that [he] was subject to a specific threat from [that] inmate" prior to the attack; and (2) Coward failed to state a claim for deliberate indifference to his serious medical

---

[27] *Id.* at 6.

[28] *Id.* at 7–8.

[29] *Id.* at 20. To the extent Coward is requesting injunctive relief, any such request is moot because he is currently incarcerated in a state correctional institution, not within the Philadelphia Department of Prisons. *See Robinson v. Cameron*, 814 F. App'x 724, 725 (3d Cir. 2020) (dismissing appeal as moot where suit sought only injunctive relief and inmate was no longer in custody); *Griffin v. Beard*, 401 F. App'x 715, 716 (3d Cir. 2010) (per curiam) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." (quoting *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003)).

[30] Compl. at 1–3 [Doc. No. 2].

[31] *Coward v. Phila. Dep't of Prisons*, No. 23-2429, 2023 WL 5672835, at *3 (E.D. Pa. Sept. 1, 2023) [hereinafter *Coward I*].

[32] *Id.* at *1, *7.

needs because he at most alleged negligence with regard to his claim that he was not informed of side effects of a medication, and he did not allege that his needs related to swelling in his legs went unaddressed or were otherwise handled with deliberate indifference.[33] Coward was granted leave to file an amended complaint in the event he could cure the defects in his claims.

On October 5, 2023, Coward returned with an Amended Complaint which asserted failure to protect claims against Sergeant Thomas and CO McPherson, and a deliberate indifference claim against Dr. Flower.[34] On November 2, 2023, the Court again dismissed the Amended Complaint for failure to state a claim because: (1) Coward failed to allege facts from which one could conclude that Sergeant Thomas knew or was aware that Coward would be attacked, or that Thomas or McPherson had an opportunity to intervene before Coward was injured by the inmates who attacked him; and (2) Coward failed to identify the medications he claimed caused the allergic reaction, to explain the nature of his allergies, to provide even approximate dates of his medical appointments, or to allege the content or context of his conversations with Dr. Flower.[35] The Court dismissed Coward's failure to protect claims with prejudice based on its conclusion that further amendment would be futile, but gave Coward leave to file a second amended complaint as to his deliberate indifference claim against Dr. Flower.[36]

## II. STANDARD OF REVIEW

Since Coward is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the SAC if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss

---

[33] *Id.* at *4–7.

[34] Am. Compl. at 1–3 [Doc. No. 9].

[35] *Coward v. Thomas*, No. 23-2429, 2023 WL 7285195, at *1–5 (E.D. Pa. Nov. 2, 2023) [hereinafter *Coward II*].

[36] *Id.* at *5.

under Federal Rule of Civil Procedure 12(b)(6),[37] which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[38] "At this early stage of the litigation," the Court will "'accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim.'"[39] Conclusory allegations do not suffice.[40] As Coward is proceeding *pro se*, the Court construes his allegations liberally.

### III. DISCUSSION[41]

Coward brings his SAC pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show

---

[37] *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

[39] *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).

[40] *Iqbal*, 556 U.S. at 678.

[41] In drafting his Complaint and Amended Complaint, Coward checked the boxes on the form he used indicating that he seeks to name the Defendants in their official capacity as well as their individual capacity. In his SAC, Coward checked the boxes indicating that he only seeks to sue the Defendants in their official capacity. SAC at 2, 7 [Doc. No. 20]. As previously explained to Coward, claims against municipal employees named in their official capacities are indistinguishable from claims against the governmental entity which employs them. *Coward I*, 2023 WL 5672835 at *1 n.3; *Coward II*, 2023 WL 7285195 at *1 n.5; *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent[.]'" (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). The SAC, like Coward's prior pleadings, does not attempt to allege an official capacity claim because Coward does not attribute any of the alleged constitutional violations to a municipal policy or custom. *See Monell*, 436 U.S. at 694. Accordingly, the Court will dismiss any official capacity claims.

However, the Court will liberally construe Coward's claims as having been asserted against the Defendants in their individual capacities, as the Court has done in cases previously filed by Coward. *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting individual capacity claim to proceed even though "Coward did not check the box indicating a desire to sue [that defendant] in his individual capacity" because the allegations clearly sought relief based on the defendant's conduct); *see also Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotation marks and citation omitted)).

that the alleged deprivation was committed by a person acting under color of state law."[42] In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.[43]

### A. Failure to Protect Claims Against Sgt. Thomas and Correctional Officer McPherson

As noted above, Coward asserts failure to protect claims against Defendants Thomas and McPherson. Because Coward was a pretrial detainee when the underlying incidents occurred, his claims are governed by the Due Process Clause of the Fourteenth Amendment.[44] The rights afforded pretrial detainees under the Due Process Clause are at least as great as those afforded by the Eighth Amendment.[45] Therefore, courts analyzing cases by pretrial detainees apply the same standard of deliberate indifference applied to Eighth Amendment cases.[46]

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners."[47] However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."[48] To state a plausible failure to protect claim, Coward must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate

---

[42] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[43] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018).

[44] *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (holding that the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees).

[45] *See Simmons v. City of Philadelphia*, 947 F.2d 1042, 1067 (3d Cir. 1991).

[46] *Id*.

[47] *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

[48] *Farmer*, 511 U.S. at 834.

indifference caused harm.[49] Deliberate indifference is a subjective standard.[50] Coward must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety."[51] "[I]t is not sufficient that the official should have been aware" of the excessive risk.[52]

1. *Claim Against Sergeant Thomas*

As before, Coward alleges that if Sergeant Thomas had listened to his complaint about the inmate who broke the television screen and put that inmate in his cell, she could have prevented the subsequent altercation with Coward that led to his injuries. This time, however, Coward pleads additional and highly relevant facts. He asserts that Bridges, the inmate who attacked him, had previously been placed in his cell by multiple different COs for screaming threats directed specifically at Coward.[53] Moreover, Coward contends that he held the position of Block Representative for several months and had the responsibility of communicating with PICC leadership about inmate concerns and conveying the Warden's expectations to the inmates.[54]

This newly alleged context is sufficient to raise an inference that the COs and leadership at PICC knew or were aware that Coward faced a risk of attack from Bridges before it happened—particularly given that, shortly before the attack at the prison phone, Coward had attempted to report Bridges's misconduct to Sergeant Thomas in the presence of others at the

---

[49] *See Farmer*, 511 U.S. at 834; *Hamilton*, 117 F.3d at 746; *see also Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (applying deliberate indifference standard to failure to protect claim asserted by pretrial detainee).

[50] *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

[51] *Id*. at 135.

[52] *Id*. at 125.

[53] SAC at 12 [Doc. No. 20] ("This inmate Bridges has been placed in his cell on a number of [occasions] for screaming 'Who is that old motherfucker kill the mothe[r]fucker[.]' This started in 2021 during [the] summer, by different CO's.").

[54] *Id.*

facility, including a CO. This new context also adds necessary color to Sergeant Thomas's alleged dismissal of Coward's oral complaint regarding Bridges's behavior. Sergeant Thomas's refusal to act by placing Bridges in his cell (as others had allegedly done before) is sufficient to raise an inference that the officials at PICC, including Sergeant Thomas, disregarded a known risk to Coward's safety.

Because there is now a sufficient factual basis from which one could conclude that the inmate in question posed a substantial risk of serious harm to Coward prior to the altercation, that the COs and supervisors at PICC had reason to know about the substantial risk, and that there was an opportunity to intervene before Coward was injured, the SAC states a plausible failure to protect claim against Defendant Thomas.[55] Accordingly, the Court will vacate the portion of its November 2, 2023 Order dismissing with prejudice the failure to protect claim against Thomas, and Coward may proceed to service on that claim.[56]

  2. *Claim Against CO McPherson*

Coward will also be permitted to proceed on his failure to protect claim against McPherson at this early stage of the litigation. Unlike in his prior pleadings, Coward alleges that McPherson was standing three feet behind him while he was on the phone and looking in a direction where he would have been able to see inmate Mullins approaching Coward from

---

[55] *See Bistrian v. Levi*, 696 F.3d 352, 369–70 (3d Cir. 2012), *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020) (concluding that plaintiff had plausibly alleged his failure to protect claim where other inmates knew that plaintiff was providing information about them to prison officials, there were credible threats to plaintiff's safety, and that the officials failed to take preventive measures).

[56] "[T]he law of the case doctrine does not limit the power of trial judges to reconsider their prior decisions," but a court still must "explain on the record the reasoning behind its decision to reconsider the prior ruling" and "take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling" before reconsidering that ruling. *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997); *see also Roberts v. Ferman*, 826 F.3d 117, 126 (3d Cir. 2016). Here, it makes sense to reconsider the Court's prior ruling given that Coward is representing himself and has provided additional relevant factual allegations at an early stage of the case. Further, given the early stage of the litigation and that fact that no Defendant has yet been served, Thomas could not have relied on the Court's earlier ruling in a manner that would prejudice her. Accordingly, reconsideration of the with-prejudice dismissal is appropriate under the circumstances here.

behind in advance of the attack.[57] Taking the allegations in the SAC as true, as the Court must at this stage of the litigation, Coward's allegation supports a plausible inference that McPherson may have been in a position to stop the attack on Coward but failed to do so.[58] Accordingly, the Court will vacate the portion of its November 2, 2023 Order dismissing with prejudice the failure to protect claim against McPherson, and Coward may also proceed to service on that claim.[59]

### B. Deliberate Indifference Claim Against Dr. Flower

Coward alleges that Dr. Flower refused to stop Risperdal and instead increased the dose, causing Coward's legs to swell, even though Coward allegedly told Dr. Flower that he was allergic to the medication and refused to consent to its use. To state a Fourteenth Amendment claim based on the failure to provide medical care, a pretrial detainee must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[60] "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[61]

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

---

[57] *See, e.g.*, SAC at 18 [Doc. No. 20].

[58] *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) ("[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so.").

[59] As previously stated with respect to Coward's claim against Thomas, it also makes sense to reconsider the Court's prior ruling as to Coward's claim against McPherson. Again, the additional relevant factual allegations dictate a different outcome, and that fact that no Defendant has yet been served means that McPherson could not have relied on the Court's earlier ruling in a manner that would prejudice him. Accordingly, the Court holds that reconsideration of the prior with-prejudice dismissal is also appropriate as to the claim against McPherson.

[60] *See Farmer*, 511 U.S. at 835; *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (holding that the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis).

[61] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quotation marks omitted).

must also draw the inference."[62] Where, as here, a plaintiff challenges the adequacy of medical care he received (as distinct from treatment that was delayed or denied),[63] "there are two very distinct subcomponents to the deliberate indifference prong . . . ."[64] First, the medical care a plaintiff received must have been objectively inadequate.[65] Second, the individual defendant must have subjectively acted with a culpable state of mind, which, "like any other form of scienter, [can] be proven through circumstantial evidence and witness testimony."[66]

Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation.[67] "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."[68]

Coward alleges that he directly informed Dr. Flower that he was allergic to the medication that Dr. Flower prescribed to him, Risperdal, and that he did not want to continue taking it. Nevertheless, Dr. Flower increased the dose despite allegedly knowing of Coward's allergy and the risk of potential harm. Taking these allegations as true, as the Court must at this early stage of the litigation, they support a plausible inference that Dr. Flower acted with deliberate indifference.[69] Coward may proceed to service on this claim.

---

[62] *Farmer*, 511 U.S. at 837.

[63] *See U.S. ex rel. Walker v. Fayette County*, 599 F.2d 573, 575 n.2 (distinguishing "cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment").

[64] *Pearson v. Prison Health Serv.*, 830 F.3d 526, 536 (3d Cir. 2017).

[65] *Id.*

[66] *Id.* at 535 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)).

[67] *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

[68] *Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (per curiam).

[69] *See Mutschler v. Malena*, No. 09-265, 2012 WL 4057241, at *10 (W.D. Pa. Sept. 14, 2012), *aff'd sub nom. Mutschler v. SCI Albion CHCA Health Care*, 516 F. App'x 104 (3d Cir. 2013) (per curiam) ("[D]eliberate indifference has been found where a physician injected a prisoner with a medication that he knew the prisoner was allergic to, and refused to treat the allergic reaction"); *see also Muhammad v. N.J. State Prison*, No. 22-4310, 2023 WL 2523941, at *3 (D.N.J. Mar. 15, 2023) (dismissing complaint because, unlike in Coward's case, "there is no

### C. Loss of Property and Disciplinary Action

The Court does not understand Coward to be raising any other claims against the Defendants, nor can the Court discern any basis for any additional claims. To the extent that Coward discusses the loss of his property during a transfer,[70] his allegations about this event do not pertain to the named Defendants and, in any event, do not support a constitutional claim.[71] Coward's allegations about the administrative misconduct filed against him also fail to state a constitutional claim, especially since his initial Complaint made clear that he was given a hearing to defend against the charges and was found not guilty.[72]

## IV. CONCLUSION

For the foregoing reasons, the Court will permit Coward to proceed on his failure to protect claims against Sergeant Thomas and CO McPherson (vacating its prior dismissals), and Coward will also be permitted to proceed on his deliberate indifference claim against Dr. Flower. An order follows, which directs service of the SAC on the named Defendants in accordance with Federal Rule of Civil Procedure 4(c)(3) and 28 U.S.C. § 1915(d).

---

indication alleged in the AC that Dr. Miller *knew* that Plaintiff was allergic to Protonix"); *McCormick v. Cama*, No. 05-1247, 2005 WL 1660693, at *2 (M.D. Pa. July 14, 2005) (plaintiff pleaded at most negligence, rather than deliberate indifference, where "[n]otably absent from McCormick's Complaint is any inference that either Defendant knew (at the time of prescribing or administering the medication) that they were giving him a medication to which he was allergic"); *Davis v. Williams*, No. 88-0177, 1988 WL 26998, at *1 (E.D. Pa. Mar. 17, 1988) ("Assuming plaintiff was given a drug to which he is allergic, despite repeatedly telling the medical personnel that he was allergic, he may state a claim for 'deliberate indifference to serious medical needs.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976))).

[70] SAC at 3–4 [Doc. No. 20].

[71] *See Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."); *Shareef v. Moore*, 844 F. App'x 487, 488 (3d Cir. 2021) (per curiam) (finding no due process violation where inmate had access to adequate post-deprivation remedy to address confiscation and destruction of property and legal papers), *cert. denied*, 142 S. Ct. 146 (2021); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison grievance system provides adequate post-deprivation remedy).

[72] *Coward I*, 2023 WL 5672835 at *5 ("[T]he Complaint makes clear that Plaintiff was given a hearing to defend against the allegedly false misconduct charges, and that he was found not guilty. It appears, then, that Plaintiff was afforded sufficient process to defend against those charges.").