# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WALLACE D. COWARD,**<br><br>**Plaintiff,**<br><br>v.<br><br>**Q. THOMAS, et al.**<br><br>**Defendants.** | **CIVIL ACTION NO. 23-2429** |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                                                **February 18, 2025**

Plaintiff Wallace Coward sued the Philadelphia Department of Prisons and individual officers and employees alleging constitutional violations pursuant to 42 U.S.C. § 1983 for deliberate indifference and failure to protect. After screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Plaintiff's filing of two amended complaints, the Court allowed Plaintiff's claims against Defendants Sergeant Thomas, Correctional Officer McPherson, and Dr. Flower to proceed. Currently before the Court is Defendants Thomas and McPherson's (Moving Defendants) Motion to Dismiss for failure to state a claim upon which relief can be granted.[1] For the reasons stated below, the Court will grant the motion.

---

[1] Mot. Dismiss [Doc. No. 35].

## I. BACKGROUND

### A. Factual Background[2]

Plaintiff's allegations against the Moving Defendants stem from two altercations between himself and different inmates while he was a pretrial detainee at the Philadelphia Industrial Correctional Center ("PICC").[3]

#### 1. Bridges Attack (Defendant Thomas)

Plaintiff was a Block Representative at PICC for several months, which involved meeting with the Warden to share the concerns of the inmates in his unit and, in turn, share with the inmates the Warden's expectations.[4] At one meeting, Plaintiff was informed that PICC's practice would be to run recreation hours with one officer per tier, so that if two tiers were on recreation hours at the same time, two officers would be present.[5] One day, however, several tiers of inmates were being supervised by a single Cadet, rather than by one officer per tier.[6] While the Cadet was busy handling a situation on the top tier, an inmate named Bridges threw an apple at the television in the K-Unit's day room, breaking the screen and leaving it inoperable.[7]

While on his way to the mediation line, Plaintiff attempted to inform Defendant Thomas about the incident with Bridges in the day room, but she ignored his attempt to alert her, saying

---

[2] Plaintiff's factual allegations must be accepted as true for the purposes of deciding this motion to dismiss. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021). The following facts were set forth in Plaintiff's Second Amended Complaint, Doc. No. 20, and are accepted as true for the purposes of this decision. The Court has summarized Plaintiff's allegations previously, most recently in its April 5, 2024 Memorandum Opinion permitting Plaintiff to proceed on his failure to protect and deliberate indifference claims against Defendants Thomas, McPherson, and Flower, respectively. *See* Apr. 5, 2024 Mem. Op. [Doc. No. 21]. For the benefit of the parties, the Court repeats the allegations here.

[3] Plaintiff states that he requires access to his medical records to provide precise dates and times of the incidents within his complaint. Second Am. Compl. at 4 [Doc. No. 20] ("SAC").

[4] SAC at 12.

[5] SAC at 9, 12.

[6] SAC at 9, 12.

[7] SAC at 3, 9, 12.

2

"I have nothing to say to you" before entering her office.[8] Plaintiff then took his medication and returned to the unit to call his wife.[9]

Plaintiff then alleges that while on the phone, Bridges threw a carton of milk at the wall near the phone, causing Plaintiff to be "covered with milk."[10] Plaintiff asked Bridges why he threw the milk, and Bridges "ran over to where [Plaintiff] was and started throwing punches."[11] Bridges struck Plaintiff on his left jaw, causing him to fall and hit his head on a steel stool, "resulting in a gash."[12] Plaintiff was then taken to an outside hospital and required two staples in the back of his head to treat his injury.[13]

The Second Amended Complaint suggests that Plaintiff and inmate Bridges had a known history of animosity: Beginning in the summer of 2021, inmate Bridges had previously "been placed in his cell on a number of [occasions]" by various prison officials for threatening to kill Plaintiff.[14] Plaintiff argues in his Second Amended Complaint that if Defendant Thomas had listened to his complaint about Bridges's behavior and contained him, the altercation and his resulting injury "would never [have] occurred."[15] He adds that certain safety procedures were not followed that day—including that Defendant Thomas failed to make a tour of the unit in the morning and that there were insufficient officers present during recreational time.[16]

---

[8] SAC at 3, 9, 20. Plaintiff states that two eyewitnesses saw Defendant Thomas ignore him that morning. SAC at 20.
[9] SAC at 9, 12. 17.
[10] SAC at 9-10, 13, 17.
[11] SAC at 10, 13.
[12] SAC at 4, 10, 13, 17.
[13] SAC at 4, 10, 13, 17.
[14] SAC at 12.
[15] SAC at 10.
[16] SAC at 12.

2. <u>Mullins Attack (Defendant McPherson)</u>

On a different occasion, Plaintiff was using the telephone when he was "struck from behind" by Mullins, another inmate.[17] Defendant McPherson, a Correctional Officer at PICC, was allegedly standing behind the phones at the time, "no more [than] three feet behind [Coward] looking in the direction where he was on the phone," but failed to prevent the strike.[18] Coward alleges that he had turned toward the wall for some privacy and saw Defendant McPherson facing the telephones, and therefore Defendant McPherson must have seen Mullins as he approached Plaintiff from behind.[19] When Plaintiff "turned to the area where the blow came from, Defendant McPherson was escorting inmate Mullins to his cell."[20] Plaintiff was sent "to medical" and received two ice packs and Tylenol for his injuries.[21]

**B.  Procedural Background**

On June 23, 2023, Plaintiff filed his first complaint against the Philadelphia Department of Prisons and individual officers and employees. On September 1, 2023, the Court granted Plaintiff leave to proceed *in forma pauperis* and dismissed his Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[22] The Court explained that Coward failed to state a failure-to-protect claim because he did not allege "anything that previously happened on the unit" between him and "the inmate who attacked him" or "provide any specific facts from which one could infer that [he] was subject to a specific threat from [that] inmate" prior to the

---

[17] SAC at 5, 11.

[18] SAC at 11.

[19] SAC at 15, 18.

[20] SAC at 5.

[21] SAC at 15.

[22] *See* Sept. 1, 2023 Mem. Op. and Order [Doc. Nos. 6, 7].

4

attack.[23] Plaintiff was granted leave to file an amended complaint to cure the defects in his claims.

On October 5, 2023, Plaintiff filed an Amended Complaint against three of the original defendants: Flower, McPherson, and Thomas.[24] Again, the Court dismissed the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), without prejudice, for failure to state a claim because Plaintiff failed to allege facts from which one could conclude that Defendant Thomas knew or was aware that Plaintiff would be attacked, or that Defendant Thomas or Defendant McPherson had an opportunity to intervene before Plaintiff was injured by the inmates who attacked him.[25] The Court again gave Plaintiff leave to cure the defects in his Amended Complaint.[26]

Plaintiff then filed his Second Amended Complaint, and the Court determined he had alleged facts sufficient to state a claim against Defendants McPherson and Thomas.[27] Defendants McPherson and Thomas were then served by the U.S. Marshals.[28]

On April 2, 2024, Plaintiff requested that he be appointed counsel,[29] and his case was referred to the Prisoners' Civil Rights Panel for the Eastern District of Pennsylvania.[30] On September 24, 2024, the Court ordered that the case be removed from the Prisoners' Civil Rights

---

[23] Sept. 1, 2023 Mem. Op. at 8 [Doc. No. 6].

[24] Am. Compl. [Doc. No. 9].

[25] Nov. 2, 2023 Mem. Op. and Order [Doc. Nos. 12, 13]; *see also* April 5, 2024 Order [Doc. No. 22] (vacating September 13, 2023 order to the extent it dismissed Plaintiff's claims against McPherson and Thomas with prejudice).

[26] Nov. 2, 2023 Mem. Op. and Order [Doc. Nos. 12, 13].

[27] April 5, 2024 Mem. Op. and Order [Doc. Nos. 21, 22].

[28] *See* Doc. No. 31.

[29] Pl.'s Request for Appointment of Counsel [Doc. No. 25].

[30] Apr. 24, 2024 Order [Doc. No. 26].

Panel because no attorney had volunteered to accept appointment in the case and Plaintiff had requested his case be removed from the Panel so he could proceed *pro se*.[31]

On September 10, 2024, Defendants McPherson and Thomas filed their Motion to Dismiss for Failure to State a Claim, which the Court considers now.[32]

## II.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[33] "At this early stage of the litigation, [the Court must] accept the facts alleged in [the] *pro se* complaint as true, draw all reasonable inferences in [Plaintiff's] favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible . . . claim."[34] Conclusory allegations do not suffice.[35] Because Plaintiff is proceeding *pro se*, the Court construes his allegations liberally.[36]

## III.   DISCUSSION

Plaintiff brings suit under 42 U.S.C. § 1983, which permits claims asserting the deprivation of constitutional rights against any person acting under color or law. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution

---

[31] Sept. 24, 2024 Order [Doc. No. 37]; *see also* Doc. Nos. 34, 36.

[32] Mot. Dismiss [Doc. No. 35].

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

[34] *Shorter v. United States*, 12 F.4th at 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)) (quotation marks and original modifications omitted).

[35] *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

[36] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[37]

Plaintiff alleges failure-to-protect claims under the Fourteenth Amendment against two prison officials in their individual capacities.[38] Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners."[39] However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."[40] To state a plausible claim, the plaintiff must sufficiently allege that: (1) the inmate was incarcerated under conditions posing a substantial risk of serious harm; (2) that the defendants knew of and disregarded this substantial risk of serious harm; and, (3) that the defendant's deliberate indifference caused the harm.[41] The standard for a substantial risk of harm is objective,[42] but the knowledge requirement is subjective, "requiring a showing that prison officials actually knew of and disregarded constitutional violations."[43] "[I]t is not sufficient that the official should have been aware" of the excessive risk.[44]

---

[37] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

[38] Because Plaintiff was a pretrial detainee at the time of the underlying incidents, his claims are governed by the Due Process Clause of the Fourteenth Amendment. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). The rights afforded pretrial detainees under the Due Process Clause are at least as great as those afforded by the Eighth Amendment, and the Court applies the same standard of deliberate indifference applied to Eighth Amendment cases. *Simmons v. City of Phila.*, 947 F.2d 1042, 1067 (3d Cir. 1991).

[39] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

[40] *Id.* at 834.

[41] *Id.* at 834, 837. *See also Hamilton v. Leavy*, 117 F.3d 742, 746 (3d. Cir. 1997); *Burton v. Kindle*, 407 F. App'x 635, 638 (3d Cir. 2010) (applying deliberate indifference standard to failure to protect claim asserted by pretrial detainee).

[42] *Beers-Capital v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

[43] *Thomas v. Tice*, 948 F.3d 133, 138-39 (3d Cir. 2020).

[44] *Beers-Capital*, 256 F.3d at 125.

### A. Defendant Thomas

Plaintiff alleges that if Defendant Thomas had listened to his complaint about Bridges after he broke the television screen and put Bridges in his cell, she could have prevented the subsequent altercation between Bridges and Plaintiff that led to Plaintiff's injuries. Defendant Thomas moves to dismiss this claim, arguing that "for Plaintiff's claim to survive, throwing an apple at a television would need to plausibly alert Defendant Sergeant Thomas that Bridges posed an excessive risk of serious harm specific to the Plaintiff."[45] The Court agrees.

Plaintiff asks the Court to infer that if Plaintiff had spoken to Defendant Thomas about Bridge's behavior, Defendant Thomas would have understood that Bridges's throwing an apple at a TV, alongside his history of threatening Plaintiff, constituted a serious risk of substantial harm to Plaintiff. Further, Plaintiff's asks the Court to infer that Defendant Thomas knew about the history between Bridges and Plaintiff. These inferences are untenable.[46] Finally, Plaintiff's allegations regarding PICC's failure to properly staff recreation hours cannot be imputed to Defendant Thomas and do not support an inference that Defendant Thomas disregarded any risk to Plaintiff. Rather, allegations of such understaffing lead the Court to believe that Defendant Thomas's decision not to hear Plaintiff's complaint during recreation hours was all the more reasonable, as she was the only prison official responsible for maintaining order at that time.

Even accepting the facts alleged in Plaintiff's complaint as true and drawing all inferences in his favor, the complaint does not establish a plausible claim against Defendant Thomas, as it still lacks necessary facts required to demonstrate that Defendant Thomas was

---

[45] Mem. Supp. Mot. Dismiss at 6 [Doc. No. 35].

[46] Not only has Plaintiff failed to allege that Defendant Thomas knew about Bridges's previous threats against Plaintiff, but threats alone cannot establish a substantial risk of serious harm. *See Counterman v. Warren Cnty. Corr. Facility*, 176 F. App'x 234, 239 (3d Cir. 2006).

aware of a substantial risk of serious harm to Plaintiff. The Court will grant Defendant Thomas's Motion to Dismiss.

### B.  Defendant McPherson

Plaintiff's failure-to-protect claim against Defendant McPherson is based on allegations that Defendant McPherson did not stop inmate Mullins from attacking Plaintiff while he was on the phone with his wife.[47] Defendant McPherson argues that Plaintiff has failed to state a claim because Plaintiff has not alleged that McPherson disregarded a known substantial risk of serious harm to Plaintiff.[48] The Court agrees.

Construing the Second Amended Complaint in the light most favorable to Plaintiff, the Court infers that he has alleged the first two elements of a failure-to-protect claim—that there was a substantial risk of serious harm to him, and that Defendant McPherson was aware of it. However, Plaintiff has not alleged that Defendant McPherson disregarded the risk to Plaintiff. Indeed, he has alleged the opposite: after inmate Mullins assaulted Plaintiff, he turned around, and Defendant McPherson was already "escorting inmate Mullins to his cell."[49] As the Motion to Dismiss points out, "Defendant McPherson intervened quicker than Plaintiff could react."[50]

Because Plaintiff has not alleged that Defendant McPherson disregarded any risk to Plaintiff, the Second Amended Complaint does not state a plausible failure-to-protect claim against Defendant McPherson. The Court will grant Defendant McPherson's Motion to Dismiss.

---

[47] SAC at 18.

[48] Mem. Supp. Mot. Dismiss at 7 [Doc. No. 35].

[49] SAC at 5.

[50] Mem. Supp. Mot. Dismiss at 7 [Doc. No. 35].

## IV. CONCLUSION

Plaintiff has failed to plausibly allege facts to establish failure-to-protect claims against Defendants Thomas and McPherson. Thus, the Court will grant the Motion to Dismiss with prejudice, as further amendments would be futile.[51] An order will be entered.

---

[51] *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (finding amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").